Case number 19-7074, Derwin Patten et al. Appellants v. District of Columbia. Mr. Ruffin for the appellants, Mr. Shifferly for the appellant. Good morning, counsel for appellants. Good morning, your honors. I'm Thomas Ruffin, if it pleases the court. I'm Thomas Ruffin. I'm the lawyer for the appellants, Hazel Brooks, Derwin Patten, and his brother, Roy Patten. In our view, the fundamental issues in this case can be stated more or less in twofold, and I think it looks at it in this way. Does the Randolph Shepard Vending Facility Program mean that when a blind person joins that program, that those blind people lose all of their rights under the Americans with Disabilities Act Rehabilitation Act and the Human Rights Act and any other anti-discrimination statutes? Because as the district court held, any factual allegation of discrimination must be regarded as a complaint about the operation and the administration of the Randolph Shepard Program. And then coupled with that, and that includes the proper reading of the fact allegations as to whether they allege violations of the Americans with Disabilities Act, the Rehabilitation Act, and the District of Columbia's Human Rights Act. But coupled with that, that statement of one issue, you would also look at whether the D.C. Code at Section 2-1831.03, that is, as part of the Office of Administrative Hearings Establishment Act of 2001, says nothing about that statute says nothing about jurisdiction of the Randolph Shepard Program cases. And since the dictum in an Office of Administrative Hearings case titled M.F.G. versus Department on Disability Services, Rehabilitation Services Administration never mentioned mayoral action coupled with the Office of Administrative Hearings chief judge action so as to enlarge OAH, Office of Administrative Hearings, jurisdiction to hear Randolph Shepard cases. Under those circumstances, does the Office of Administrative Hearings have jurisdiction to hear a Randolph Shepard line vendor case? And when we look at this, we say that the Office of Administrative Hearings has no jurisdiction to hear these cases and that the reading of Randolph Shepard Act by the U.S. District Court is overbroad insofar as it basically says that any allegation of illegal discrimination must be read as asserting rights under the Randolph Shepard Act. Mr. Ruffin, so at least as I read it, it seems our circuit precedent requires us to read the Randolph Shepard Act as providing for mandatory exhaustion of administrative remedies. Do you agree with that reading of circuit precedent? Not in all cases. I think it calls for that when a Randolph Shepard blind vendor asserts rights under the Randolph Shepard Act. So like for example, if you look at the case of committee of blind vendors versus District of Columbia, the blind vendors associations that filed that lawsuit, they actually alleged problems with the application of the Randolph Shepard Act. And they said that the state licensing agency was not properly administering the program. And then similarly, if you look at the Weinberger case, there was the issue of whether two different fast food chains could set up fast food restaurants in the military basis. And the Randolph Shepard blind vendors said that, hold it, that violates our rights in the Randolph Shepard Act. And so I think when it answers your question, your honor, when Randolph Shepard blind vendors assert their rights under that Randolph Shepard Act or alleged problems with the actual administration of the program as a program itself, then there would be a requirement of exhaustion. However, I think even with that, there's a question about exhaustion that needs to be explored more deeply than what has been done historically. Do you think though, I mean, so I think part of your claim is futility, right? That the OAH lacks jurisdiction. And so it would be futile to raise those claims before the OAH. And so I guess one of my questions is after the Supreme Court's decision in Ross v. Blake, are we permitted to read a futility exception into a mandatory exhaustion scheme like the Randolph Shepard Act? And is there anything in the Randolph Shepard Act that suggests we can apply judge-made exhaustion exceptions to the exhaustion requirement? Well, I think that this court would probably be reluctant to apply judge-made exceptions to the exhaustion requirement. However, even when we're looking at the exhaustion requirement, let's say that that absolutely applies. We have to look at the scheme that's been set up by the State Licensing Agency, and that's the District of Columbia government. The Council of the District of Columbia set up in section 2-1403.03, subsection B, a fair hearing process that's required under the Randolph Shepard Act. And it's set it up specifically for civil rights cases. But when you look at Title 20 of the United States Code, sections 107D-1, subsection A, and 107B, subsection C, the Randolph Shepard Act calls for a fair hearing for the blind vendors. It didn't say set it up at the Office of Administrative Hearings. It didn't even say set up an administrative hearing. What it said is give the Randolph Shepard blind vendors a fair hearing. And the Council very carefully crafted for all civil rights claims in section 2-1403.03, subsection B of the D.C. Code, the option of anybody, the Randolph Shepard vendors going to court, any court of competent jurisdiction, or to the Office of Human Rights. And in fact, in fact, under the District of Columbia Regulations, Title 4 of the D.C. Municipal Regulations at section 128.1, if the Randolph Shepard blind vendors took their matter to the Office of Administrative Hearings, as the government has insisted, the Office of Administrative Hearings would be required to tell my clients and any, excuse me, any other blind vendor, take your case to the Office of Human Rights under D.C. Code, section 2-1403.03, subsection B. And make it clear that the Office of Administrative Hearings would have no jurisdiction to hear a discrimination case. And so what we really have here is the government, on the one hand, in its advocacy, and the district court in its opinion below, looking at the allegations, the fact allegations in the Second Amendment complaint. And even though they're talking about traditional claims under traditional disability discrimination claims under the ADA and under the Rehabilitation Act, they're saying, well, since it's in the Randolph Shepard program, you're really talking about how the Randolph Shepard program deals with these matters, and that must be exhausted. Okay, if it does, then it has to be exhausted as the city provides for it, the legislature provides for it, as section 2-1403.03, subsection B. And I think that's something that the government just, you know, for one reason or another, has not squarely responded to. And that's just a real problem. And then we have, on top of that, the Office of Administrative Hearings, Establishment Act of 2001. And that's at D.C. Code, section 2-1831.03. There is no reference at all to the in that jurisdictional statute. However, there is one reference in that statute to the Office of Administrative Hearings taking jurisdiction over cases from the Department on Disability Services. But it's not from the Rehabilitation Services Administration, which holds the Randolph Shepard program. It's rather from the Developmental Disability Administration. And that's under section 7- pardon me, that's in section 2-1831.03, subsection B.15. And that refers to disability, severely disabled individuals, developmentally disabled individuals pursuing actions under section 7-761.13. And that is totally different from what's set up in the Randolph Shepard program. That's number one. And the government, in another case, in a related case that was at the D.C. Court of Appeals, agreed with us that that section does not apply to the Randolph Shepard program. However, even there, that matter that deals with the one point where the legislature said, okay, the Office of Administrative Hearings has jurisdiction over something from the Department on Disability Services. That case has to go first to something called an external reviewer and then appeal from there to the Office of Administrative Hearings. And even then, under section 7-761.13, subsection C, and also under 29 District of Columbia Municipal Regulations, section 13206.1, they make clear that those disabled individuals' civil rights are perfectly preserved, even though they may exhaust remedies for administrative issues through that process. And I add that because, I'm sorry. You've exhausted your time. Let's hear from the government, and then we'll give you a couple of minutes on rebuttal. Thank you very much, Jan. Good morning. May it please the Court, Carl Schifferle for the District of Columbia. It is well established under this circuit's precedent that the Randolph Shepard Act mandates exhaustion of administrative remedies prior to judicial review. That exhaustion requirement applies broadly to, quote, any blind licensee dissatisfied with any action arising from the operation or administration of the vending facility program. The District Court was correct that plaintiff's claims involving access to program documents and inspections of their facilities by program monitors arise from the operation of the program. They are indeed challenges to the administration of the program, and thus must be exhausted. Alternatively, plaintiff's complaint fails to state a claim, a plausible claim, of disability discrimination. And the District Court found as much. The plaintiff's brief does not address that ruling in its opening plaintiff's brief. Opening brief does not address that ruling, and thus it would be forfeited in any event. I can address first the exhaustion point. The plaintiffs pursued two types of claims on appeal. The first involves access to program documents in a format that they can read. These claims arise directly from the administration of the program. The statute and the implementing regulations generally entitle the plaintiffs to access to these documents. Those regulations also provide for auxiliary services, such as communications in Braille or audio recordings. And they more generally provide, excuse me, for vocational rehabilitation services, and those would include auxiliary aids of the type the plaintiffs are seeking. The second type of claim that plaintiffs pursue on appeal involves the inspection of their facilities by program monitors. They challenge the nature, or even just the fact of the inspections, as well as the qualifications of the program monitors conducting the inspections. But once again, this is something that arises from the administration of the program. The Act requires the Rehabilitation Services Administration, as the state licensing agency, to manage and supervise each facility in the program. And the regulations require that where that facility is not operating in compliance, whether it's operating in agreement or with applicable laws and regulations, that the Rehabilitation Services Administration has to revoke that operating license. Plaintiffs can't simply evade this analysis that shows that their complaints, their grievances arise from the operation of the administrative, arise from the operation or administration of the program simply by labeling the claims as disability discrimination. I mean, I would first point out that there will still ultimately be review. So it's not as though as Mr. Ruffin suggested that these claims will not ultimately be heard by a federal court. It's simply a question of exhaustion of administrative remedies. And the plaintiffs can't avoid that requirement, as I said, by simply labeling their claims as disability discrimination. The reason, one of the reasons why this court has required and for exhaustion is that the need to prevent circumvention of the prescribed administrative process. And that circumvention would be, that risk would be particularly acute here, where this program is only open to individuals of plaintiffs who have plaintiff's type of disability. So it would be the case that any vendor in the position of the plaintiffs could simply label their grievance with the operation or administration of the program as a claim of disability discrimination. So, and there's also the risk as well, not only circumvention of that administrative process, but parallel proceedings where you have both an action in district court and then parallel proceedings in the administrative process. And that's another reason why exhaustion exists to avoid that possibility. Has OAH previously exercised jurisdiction over similar types of discrimination claims? Are there examples of that occurring? The OAH, assuming that the OAH does not have the authority to adjudicate directly claims of your honor's point. That may be true, but that doesn't obviate the need to exhaust. The office of administrative hearings regularly hears cases involving the Randolph Shepard Act. There's no question that there is an administrative process available to hear these grievances. And that administrative process serves benefits, even if the office of administrative hearings can't directly adjudicate the claim of discrimination, it nonetheless can create an administrative record, can conduct fact-finding. Does it regularly or does it occasionally do that in cases that raise discrimination claims? Well, I point to Mr. Patton's own proceeding before the office of administrative hearings where he challenged the termination of his operating agreement for the facility of a defense intelligence agency. And that decision is in the record in the appendix in this case. And that's the way the process should work, that the claims discrimination, disability discrimination can be raised in the context of the administrative proceeding, but the administrative proceeding can still take place. You can still have a the arbitration panel, and then ultimately to a federal court on review. So just as the situation in numerous cases in this circuit and the Supreme Court, or even if, for example, a statutory claim or a constitutional claim couldn't necessarily be adjudicated by the administrative agency. Nonetheless, that did not excuse the exhaustion requirement. And I'm referring specifically to cases in the Supreme Court, like the Elgin case, cases in this court, like Apchey v. Trump decided in 2019. Those cases likewise presented situations where, for example, constitutional challenges to the validity of other statutes, and even assuming that the administrative agency where the plaintiffs had to go to exhaust couldn't adjudicate those types of claims. Nonetheless, the court held that exhaustion was required. How can a blind vendor claim disability discrimination on your theory if I'm surprised to hear you say that the agency can't adjudicate that claim? How do they ever get it litigated? They can't raise it before the agency, and then the only thing that's subject to judicial review is the Randall Shepard determination, which you've just said doesn't encompass a question whether the vendor was discriminated against. No, the ultimate judicial review would encompass a claim of disability discrimination. Judicial review in a court of appeals of the agency action, which is the arbitration, and there's a channeling mechanism. You start making a finding, and that's reviewed in a federal arbitration, and that's reviewed in a court of appeals under the APA. My understanding would be reviewed in the district court under the Randall Shepard. I'm sorry, district, but under the APA, under the standards. Right, and that would be correct. I don't think that would be any different than the Elgin case, Supreme Court case, where it was under the Civil Service Reform Act. The Merit Systems Protection Board would be issuing the adjudication that would be reviewed under the APA by a federal court. Likewise, an AFTI versus Trump decision of the Federal Labor Relations Authority, again, reviewed under the Administrative Procedure Act, same judicial mechanism of review. Right, but your theory now is that Randall Shepard, not only does it provide the exclusive channeling mechanism for raising claims, which is start with the state agency and proceed as we discussed, but it actually, as a substantive matter, um, impliedly repeals the ADA and the Rehab Act. Not at all, Your Honor. I mean, just because it channels those claims to an administrative process doesn't mean it repeals those acts, because as I said, ultimately, there will be judicial review. Maybe an example might help clarify, um, um, you know, there could be a claim that my operating agreement was improperly terminated, and it's based on discrimination. Um, the, the reason for the termination, ostensibly, is the facility was not kept clean. Uh, the vendor could argue, well, that wasn't the standard to apply, and in any event, I kept my facility spotless, and therefore, it was pretext for discrimination. Um, the administrative agency can, can still proceed to resolve issues related to that claim, what in fact the program standard was regarding cleanliness, whether as a factual matter, the facility was kept cleanly or not, and ultimately, as I said, the, the, the purpose of exhaustion is even if the administrative agency can't necessarily finally adjudicate those claims, it can facilitate judicial review by creating that record, by creating fact-finding, um, that a court will ultimately review and pass upon, um, merits of any claim that plaintiff has. We believe that's consistent, as I said, with the case law, uh, from the Supreme Court and, and from this circuit in terms of how that administrative process works when you have, for example, constitutional claims or other statutory claims that the agency may not be able to necessarily fully adjudicate, um, nonetheless, exhaustion that's required in those circumstances. So is that true even where the remedy under the federal discrimination statute would be different? The available remedy? Uh, yes, as long as it's meaningful judicial review. I don't think it requires that, um, you know, every particular aspect of remedial relief be necessarily available through the administrative process, but as long as there's meaningful judicial review. But meaningful judicial review is limited by the Administrative Procedure Act. My hypothetical is if you were a plaintiff in the district court proceeding on a complaint under the discrimination statutes, you'd still have your burden, et cetera, but the APA would not be involved. Uh, I, I think it would, if I understand correctly. I mean, these cases, once they go through the administrative process. No, no, no. I'm, I'm following up as to whether or not the way you're interpreting, um, the mandatory requirement means that, I mean, I could come up with a hypothetical that any other plaintiff who's not blind or otherwise covered by the Randolph Shepard Act could go to district court, claim discrimination under these conditions. Um, whereas you cannot get that through the Randolph Shepard Act. Well, as I said, I mean, it's my understanding. That's what I'm getting at. Right. It's my understanding, first of all, that the availability of the same type of relief isn't a necessary prerequisite to an exhaustion requirement. Secondly, there's no reason for the, that I know of that the district court couldn't award appropriate relief, uh, upon review, uh, of, you know, the final administrative decision in Randolph Shepard Act cases. Car. I mean, I tried to make it extreme. I mean, obviously money damages is different. In other words, I understand the channeling notion, and I understand in the civil service reform act context, um, the remedy doesn't necessarily have to be the same, but there's no question here that under the mandatory exhaustion requirement, not only do you have to spend a lot of time and money going through that process, you can't get your car. Whereas where a non blind person, you could file your complaint in the district court. And if you were able to meet your burden, uh, then the district court would be able to award you this car. I just want to make an extreme situation. Uh, not only, I mean, the theory was this was going to be a less expensive, timely process for the vendors to get what they are complaining about. They want these aids if they want the documents in readable type. And yes, and that that benefit of the process is served. It may well be as a result of the administrative adjudication that those issues are resolved. It's an opportunity for the agency to correct any errors. Uh, access to program documents needs to be fixed. This is an application of implicit repeal. No, Your Honor. I'm not suggesting that at all. And in fact, as I said, I think the district court on review would have the opportunity to award appropriate relief. I'm not just to put it an attorney's fees. I'm sorry, Your Honor. Well, you know, I think that district court would if it's necessary in order for exhaustion to be a requirement, then I think the district court would have the ability to award appropriate relief after that administrative process is exhausted. As I said, it serves a purpose in allowing the agency to correct errors to develop a factual record. That's the issue that we're getting at. All right. Let me try. If you're done, Judge Rogers, let me try it this way. I'm trying to exploit the fact that review starts in district court. So, um, the plaintiff goes through the mandatory exhaustion and based on what you've said here, the plaintiff can litigate all of those issues in Randall Shepard terms about was the vendor fired for violation of the operating agreement and that will generate that process will generate whatever fact finding it generates expertise is brought to bear and so on. It goes up through the secretary and then at the end of the administrative process, the aggrieved vendor files a complaint in district court and the complaint has two counts. Count one through the APA seeking judicial review of the Randall Shepard determination. Count two under the ADA seeking a de novo trial of the disability discrimination question seeking money damages and let's assume that the administrative findings have whatever preclusive effect they have but to the extent that the agency hasn't directly addressed disability determination, plaintiff says, I want a trial on those open issues. Is that count to litigable on your theory at that point? I think it may well be. My argument certainly is not premised that it would not be litigable. I mean, your honor mentioned the preclusive effect of actual findings. So I would at least insist upon that, which might narrow the case, but on your representation that the agency won't directly be deciding the question of disability-based discrimination, it wouldn't end the case. I mean, suppose the agency says, well, you breached your operating agreement and that's basis for termination under Randall wouldn't have lost the contract. Yeah, it might not necessarily do so, but the plaintiff could be satisfied with the outcome of having their operating agreement restored. So there's certainly many possibilities in which judicial review would not be necessary. Ultimately, I would also given the questions on exhaustion, I would want to make the point too about the district court's ruling that the complaint in itself failed to state a plausible claim of disability discrimination. The district court, I think was quite correct to say that the allegations merely suggested that the reason for the actions was the plaintiff's participation in the program. It was not by reason of disability. It was by reason they were vendors in the program. As I said, this argument was for, this issue was forfeited by the plaintiffs by not challenging that particular aspect of the district court's ruling. In any event, that district court ruling is correct. We believe that this program, again, is only open to those with a plaintiff's particular type of disability. And so it's not a question of program monitors going out and inspecting others who are not participants in the program, for example. The inspections are clearly by reason of participation in the program. It's just so happens the program is only open to those with plaintiff's disability, that particular type of disability, but that doesn't make it a plausible claim of disability discrimination. So I think even if the court has some concerns about exhaustion, alternative basis is also proper for affirmance as well. I do see that I'm out of time. I'm happy to address any questions from the court then. Covered mine. Thank you. Thank you. Thank you. Counsel for Appellant? Yes, ma'am, Your Honor. I'll try to use my time as wisely as possible. I want to say, first of all, that I think the court made a very astute observation. What the government is arguing and what would happen with the affirmance of the lower court opinion would be that for Randolph Shepard blind vendors, those blind people, their ADA rights would be basically abolished. They would have no opportunity for injunctive release at the Office of Administrative Hearings, no opportunity for damages. Office of Administrative Hearings insists that they have no authority to issue damages, to award damages, no opportunity for attorney's fees, and hence the blind vendors would have no rights under the ADA. I would even bring to your attention another matter with regard to the appeal of the matter under the Administrative Procedures Act. Under the D.C. Code, under the D.C. regulations, if I'm not mistaken, the appeal would go to the D.C. Court of Appeal. It wouldn't go to a U.S. District Court or to the Superior Court. And the D.C. Court of Appeals would have a very, very limited standard of review to apply. And it would basically be whether the law regarding Randolph Shepard was properly applied, yes or no. Not whether my clients or any other blind vendors have rights that should have been protected under federal law or under the Human Rights Act. I will even mention again what the government consistently overlooks. Title IV, the District of Columbia Municipal Regulations, that's Section 128.1, made sense of what was happening in my two clients' case, Hazell Brooks and Derwin Patton's case. When we raised the issue of disability discrimination affecting their performance in the Randolph Shepard program, the Office of Administrative Hearings refused to take jurisdiction. And that section, Section 128.1 of Title IV of the D.C. Municipal Regulations says that any discrimination matter brought to any agency other than the Office of Human Rights must be referred to the Office of Human Rights. That applies to the Office of Administrative Hearings. And I think notwithstanding what the lower court said and what the government says, my client's case is in many respects similar to what was litigated in Barnett v. D.C. Court of Appeals. My clients received written documents. My clients received written documents and they could not, pardon me, this is beautiful. My clients received written documents and they could not possibly see or read the paper. And they asked for auxiliary aids and they weren't providing any. And moreover, if a blind graduate of law school was taking the bar examination without any auxiliary aids, if that blind graduate had turned in their bar exam, however they took it, being unable to see the document, if their test was corrected by the National Conference of Bar Examiners and by local judges while sighted applicants, sighted law school graduates, had their test corrected solely by the National Conference of Bar Examiners, those circumstances would be illegal segregation under ADA and the Rehabilitation Act. And all we're saying is that notwithstanding how the government examines our claims, we talk about not perceiving any important communications, even unimportant communications in any form other than small print writing that blind people can't see or read. And that they were forced upon, that they had to endure inspections that were illegal under Section 7-731, Subsection A, Paragraph 5, and Subsection B of the D.C. Code. All right. Thank you, Mr. Ruffin. I think we have your argument. Did my colleague have a question? We will take the case under advisement.
judges: Rogers, Katsas, Rao